NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

_____  :
                              :
NANCY L. DILEO,               :
                              :
        Plaintiff,           :     Civil No. 05-2750 (RBK)
                              :
        v.                   :     **OPINION**
                              :
COMMISSIONER OF SOCIAL        :
SECURITY,                     :
                              :
        Defendant.           :
_____  :

**KUGLER**, United States District Judge:

    This matter comes before the Court upon appeal by Plaintiff Nancy L. DiLeo ("DiLeo"), pursuant to 42 U.S.C. § 405(g), for review of a final determination of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits (DIB), Widow's Insurance Benefits ("WIB"), and Supplemental Security Income ("SSI"). For the reasons set forth below, the decision of the Commissioner will be affirmed.

## I.   Background

    DiLeo, a sixty-one year old woman who was widowed in 2001, alleges that she is disabled with an onset date of July 23, 2001, due to coronary artery disease, chronic obstructive pulmonary disease, and major depressive disorder. She has a ninth or tenth grade education, (Rec. 17, 29, 96), and her most recent work was

as a sales person at a pet store.

Hospital records from a cardiac catheterization dated July 13 and 14, 2001, indicate a possible coronary artery spasm, nonobstructive coronary artery disease, and chest pain. (Rec. 134, 137.) A consultive evaluation by Dr. Nithyashuba Khona on January 2, 2003, notes that DiLeo has a history of depression and had a heart attack about a year and a half earlier. (Rec. 140.) Dr. Khona diagnosed DiLeo with depression and status post myocardial infarction. (Rec. 143.)

Also in the record is a residual functional capacity ("RFC") assessment, dated January 21, 2003, by Dr. M.A. Sacharov, which limits DiLeo to occasional lifting of fifty pounds, frequent lifting and/or carrying of 25 pounds, climbing occasionally, and avoidance of "fumes, odors, dusts, gases, poor ventilation, etc.," due to DiLeo's emphysema. (Rec. 145-47.)

Plaintiff had a psychiatric review on February 10, 2003, with Allan Hochberg, Ph.D., diagnosing DiLeo with major depression and panic disorder. (Rec. 153, 55.) Dr. Hochberg classified her impairment as "not severe" and found that she has a mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace. (Rec. 153, 160.)

A consultative evaluation by Dr. J. Theodore Brown, Jr., on

2

January 14, 2003, diagnoses DiLeo with major depressive disorder without psychotic features, panic anxiety disorder without agoraphobia, and avoidant personality disorder. (Rec. 165.) Dr. Brown observed that DiLeo saw a psychiatrist, Dr. Arturo Gomez, every three months and took Effexor to treat her depression. (Rec. 163.) He also noted that her recent and remote memory skills were mildly impaired, but that she was "[a]ble to follow and understand simple directions and perform simple rote tasks." (Rec. 165.) He found that her "[a]bility to maintain attention and concentration, consistently perform simple tasks, perform complex tasks independently, relate adequately with others, or deal with stress are compromised by mood swings, periods of crying and irritability, social withdrawal and a low tolerance for pressure or stress." (Rec. 165.)

Dr. Gomez's treatment records from December 1, 2003, through March 1, 2004, confirm that DiLeo's Effexor prescription was increased over time. (Rec. 173.) At visits on December 1, 2003, and March 1, 2004, DiLeo was deemed "stable," (Rec. 168, 172) and was assigned a global assessment of functioning score ("GAF") of 70, (Rec. 170, 174).

Plaintiff filed an initial application for DIB and SSI on November 7, 2002, alleging a disability onset date of July 23, 2001. After the commission denied her claims both initially and upon reconsideration, DiLeo was heard before Administrative Law

Judge ("ALJ") Daniel W. Shoemaker, Jr., on June 4, 2004. In an opinion issued November 26, 2004, Judge Shoemaker denied Plaintiff's application. The Appeals Council denied Plaintiff's request for review on April 13, 2005, rendering Judge Shoemaker's opinion the Commissioner's final decision.

Judge Shoemaker found that DiLeo met the nondisability requirements for WIB with a prescribed period ending July 1, 2008, and the nondisability requirements for DIB for insurance benefits until March 31, 2003. He also determined that DiLeo is not disabled for the purposes of the Social Security Act. Specifically, Judge Shoemaker noted that DiLeo had not performed any substantial gainful work since her disability onset date. (Rec. 17.) He also found that DiLeo's coronary artery disease and major depressive disorder amount to "severe" impairments under the Regulations, but that she did not provide any evidence of her chronic obstructive pulmonary disease. (Rec. 18.) He determined that none of these conditions met or equaled a listed impairment. (Rec. 18.)

In assessing DiLeo's RFC, the Judge concluded that her depression has only a "mild impact," and that her mental functional abilities are "not significantly reduced." (Rec. 20.) When considering DiLeo's subjective complaints, the ALJ found that DiLeo was not fully credible because her testimony "was overly vague, overly dramatic and exaggerated considering the

objective medical findings." (Rec. 20.) He concluded that she could lift or carry ten pounds frequently and twenty pounds occasionally, stand or walk for six hours in an eight hour day and sit for six hours in an eight hour day. (Rec. 20.) Based on this RFC, Judge Shoemaker determined that DiLeo would be capable of performing her past relevant work as a sales clerk, based on the description of the position provided in the Dictionary of Occupational Titles ("DOT").

## II.  Standard of Review

District Court review of the Commissioner's final decision is limited to ascertaining whether the decision is supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Morales v. Apfel, 225 F.3d 301, 316 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 422 (3d Cir. 1999)). If the Commissioner's determination is supported by substantial evidence, the Court may not set aside the decision, even if the Court "would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (citing Hartranft, 181 F.3d 358, 360 (3d Cir. 1999)); see also Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984) ("A district court

may not weigh the evidence or substitute its conclusions for those of the fact-finder.").

Nevertheless, the reviewing court must be wary of treating "the existence vel non of substantial evidence as merely a quantitative exercise" or as "a talismanic or self-executing formula for adjudication." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."). The Court must set aside the Commissioner's decision if the Commissioner did not take into account the entire record or failed to resolve an evidentiary conflict. Schonewolf v. Callahan, 972 F. Supp. 277, 284-85 (D.N.J. 1997) (citing Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978)) ("[U]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."). Furthermore, evidence is not substantial if "it constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." Wallace v. Secretary of Health and Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (citing Kent,

710 F.2d 110, 114 (3d Cir. 1983)).

**III. Discussion**

The Commissioner conducts a five step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). The Commissioner first evaluates whether the claimant is currently engaging in a "substantial gainful activity." Such activity bars the receipt of benefits. 20 C.F.R. § 404.1520(a). The Commissioner then ascertains whether the claimant is suffering from a severe impairment, meaning "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the Commissioner finds that the claimant's condition is severe, the Commissioner determines whether it meets or equals a listed impairment. 20 C.F.R. § 404.1520(d). If the condition is equivalent to a listed impairment, the claimant is entitled to benefits; if not, the Commissioner continues on to step four to evaluate the claimant's RFC and analyze whether the RFC would entitle the claimant to return to her "past relevant work." 20 C.F.R. § 404.1520(e). The ability to return to past relevant work precludes a finding of disability. If the Commissioner finds the claimant unable to resume past relevant work, the burden shifts to the Commissioner to demonstrate the claimant's capacity to perform work available "in significant numbers in the national

economy." Jones, 364 F.3d at 503 (citing 20 C.F.R. § 404.1520(f)).

**A.  Depressive Disorder**

DiLeo argues that the ALJ erred in failing to take her depressive disorder into account when assessing her RFC. In particular, DiLeo contends that because Dr. Brown found her able only to "follow and understand simple directions and perform simple rote tasks," she is only qualified for jobs demanding a reasoning development level 1. (Pl. Mot. 12.) This would preclude her from work such as that at a pet store, requiring a reasoning development level 4, or ordinary sales work, requiring a reasoning development level 3.[1]

The Third Circuit instructs ALJs to attribute greater authority to the opinion of a treating physician than to records from a one-time consultation. Humphreys v. Barnhart, 127 Fed. Appx. 73, 75 (3d Cir. 2005) (emphasizing the significance of the treating physician's records). Consistent with this mandate, Judge Shoemaker opted to give greater weight to the report of DiLeo's treating psychiatrist, Dr. Gomez, than the findings of

---

[1] Employment requiring a reasoning development level 4 "requires the hypothetical worker to apply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists." (Pl. Mot. 11-12.) General sales work, such as that at the card store, constitutes a development level 3, requiring "the ability to apply common sense understanding to carry out instructions furnished in, written, oral or diagrammic form." (Pl. Mot. 12.)

Dr. Brown, who only saw DiLeo for a single evaluation on January 14, 2003. The ALJ specifically acknowledged that he did not accord substantial weight to Dr. Brown's opinion because it was "a one time evaluation and was contrary to the treating medical doctor." (Rec. 20.)

Moreover, contrary to DiLeo's contentions, Judge Shoemaker did consider her depression in determining her RFC. He nevertheless determined that her "depressive symptoms have a mild impact on her functioning," and therefore did not limit her RFC in any substantial way. (Rec. 20.) To so conclude, Judge Shoemaker looked to Dr. Gomez's notation that DiLeo's GAF score as of December 1, 2002, and March 1, 2003, was 70. (Rec. 170) The ALJ noted that according to the DSM-III, a global assessment of 70 indicates "some mild symptoms or some difficulty in social, occupational or school functioning, but generally functioning pretty well." (Rec. 20.) From this Judge Shoemaker concluded that DiLeo's depressive symptoms have only a "mild impact on her functioning." (Rec. 20.)

Thus, although DiLeo is correct that Judge Shoemaker did not accord substantial weight to Dr. Brown's consultative report, the ALJ's conclusions are inconsistent with Dr. Brown's opinion only to the extent that the ALJ adopted Dr. Gomez's findings. The ALJ did not err in ascribing greater weight to the opinion of DiLeo's treating physician or in looking to the treating physician's

records to conclude that DiLeo's depression causes only "mild symptoms." According, the ALJ's determination that DiLeo's depression does not prevent her from resuming her past relevant work is supported by substantial evidence and will be affirmed. Henry v. Barnhart, 127 Fed. Appx. 605, 607 (3d Cir. 2005) (affirming ALJ's conclusion that claimant's depression and anxiety does not constitute a disability, despite claimant's testimony to the contrary).

**B.   Vocational Expert Testimony**

DiLeo also argues that Judge Shoemaker was obligated to consider vocational expert testimony to determine whether Plaintiff's non-exertional impairments would permit her to return to her past relevant employment. DiLeo contends that Judge Shoemaker's failure to consult a vocational expert caused him to misread the vocational requirements of the sales clerk position and find DiLeo capable of resuming such work. DiLeo asserts further that Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000), stands for the proposition that where a plaintiff alleges non-exertional impairments, such as depression, the ALJ must retain a vocational expert to ascertain the claimant's vocational capacity.

As a preliminary matter, there is no indication that Judge Shoemaker misread the requirements of DiLeo's work as a sales clerk. Rather, as provided above, the ALJ found that DiLeo's RFC was not significantly impacted by her depression and that she

10

was, therefore, capable of resuming her position as a sales clerk.

In any event, Sykes is inapposite to the case at bar. Sykes stands for the proposition that where the Commissioner must ascertain whether a claimant suffering from nonexertional impairments can perform jobs existing in the national economy, an inquiry in which the Commissioner bears the burden, the Commissioner cannot simply rely upon the medical-vocational grids. This is because the grids do not "purport to establish the existence of jobs for persons . . . with both exertional and nonexertional impairments." Sykes, 228 F.3d at 267 (quoting Burnam v. Schweiker, 682 F.2d 456 (3d Cir. 1982)).

Consequently, nothing in Sykes necessitates a vocational expert to address whether the claimant's RFC would permit her to resume her past relevant work, particularly when the ALJ already has access to and employs the descriptions set forth in the DOT. Accordingly, the ALJ did not err in making his determination without testimony of a vocational expert, and his decision will be affirmed.

The accompanying Order shall issue today.


Dated: 5-22-06                          S/Robert B. Kugler
                                        ROBERT B. KUGLER
                                        United States District Judge